# Exhibit "1"

**MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT**

**THIS MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT** ("**Agreement**") is entered into and effective as of the date identified below by and between **BLACKCLOAK, Inc.**, a Delaware corporation, and the person or company identified below.

For the purposes of this Agreement, a "**Disclosing Party**" is a party disclosing Confidential Information (as herein defined) and a "**Receiving Party**" is a party receiving disclosed Confidential Information. The parties hereto desire to exchange certain information relating to the possibility of entering into a potential business relationship or in connection with a business relationship that develops (the "**Permitted Use**").

In consideration of the foregoing, and for good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, the parties covenant and agree as follows:

1. **Confidentiality and Non-Disclosure**.

    (i) Confidential Information. Each party acknowledges, understands and agrees that a Disclosing Party possesses valuable commercial assets in the form of information in written, electronic, or other media, some of which may be disclosed verbally and all of which is confidential and of a proprietary nature, including but not limited to business plans, business concepts and ideas, intellectual property, trade secrets, formulas, processes, methods, pricing data, customer lists and data, employee lists and data, know how, financial data, and any other information that is not publicly known and derives value from not being publicly known, as well as any personally identifiable information (the "**PII**") of Disclosing Party's customers, employees or business partners, which shall mean any information that identifies or is capable of identifying an individual and shall include without limitation, an individual's name or address or telephone number plus another identifier such as bank or other financial account number, credit or debit card number, driver's license number, social security number, state issued identification number, passport number, biometric data, health and medical information or a combination of components that would permit access to an account, such as user name and password; and for purposes of this definition, PII also includes an account number or TIN/EIN of a business customer as well as a combination of components that would permit access to an account, such as user name and password (all such information, the "**Confidential Information**").

    (ii) Confidentiality and Non-Disclosure. The Receiving Party understands and agrees that as a condition to receiving any of the Confidential Information, the Receiving Party, on its behalf and on behalf of its directors, officers, employees, agents, representatives and affiliates, covenants and agrees from the date written above and into perpetuity:

    a. To hold in strict secrecy and confidence and not disclose or reveal to any third party any Confidential Information except as approved in writing by the Disclosing Party;

    b. Apart from the Permitted Use, not to make any use whatsoever of Confidential Information without the prior written consent of Disclosing Party expressly waiving the

restrictions provided herein, and not to use such Confidential Information in connection with any work performed by the Receiving Party for itself or for any other person, firm or entity;

     c.     Not to reproduce or distribute Confidential Information in any form, tangible or otherwise;

     d.     To limit the availability of the Confidential Information within Receiving Party's organization to those people whom the Receiving Party deems have a need to see and use it and who have agreed to be bound by the provisions of this Agreement;

     e.     To take commercially reasonable steps to protect the Disclosing Party's Confidential Information, which includes maintaining an information security program designed to protect against anticipated security threats or hazards as well as unauthorized access or use, which steps must be at a minimum at least as protective as those the Receiving Party takes to protect its own confidential information;

     f.     To notify the Disclosing Party promptly upon the discovery of any unauthorized use or disclosure of Confidential Information and to cooperate with the Disclosing Party to help regain control of the Confidential Information and prevent its further unauthorized use or disclosure; and

     g.     To promptly return to Disclosing Party upon request the Confidential Information then in tangible form or (at the Disclosing Party's option) destroy all copies of such Confidential Information and certify to the Disclosing Party that such destruction has occurred; provided, however, that notwithstanding the foregoing or anything in this Agreement to the contrary, neither party is obligated to erase Confidential Information commingled with other information or documents of the Receiving Party if it would pose a substantial administrative burden to excise such Confidential Information, or if such Confidential Information is contained in an archived computer system backup made in accordance with such party's security or disaster recovery procedures, provided in each case that such commingled documents and archived copies: (i) are handled in the ordinary course of such party's data processing procedures; and (ii) remain fully subject to the obligations of confidentiality in this Agreement until the eventual erasure or destruction of the Confidential Information or the expiration of the confidentiality obligations set out in this Agreement.

     (iii)     <u>Exceptions Related to Compelled Disclosure</u>.  Confidential Information may be disclosed to a legislative, judicial, or regulatory body requiring its disclosure, provided that, to the extent permitted by law, prior to such disclosure, the Receiving Party has notified the Disclosing Party of the requirement with an opportunity for the Disclosing Party to object or seek an appropriate protective order.

     (iv)     <u>Whistleblower Immunity</u>.  To the extent applicable under the Defend Trade Secrets Act, the Receiving Party shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret (as defined in section 1839 of title 18, United States Code) that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  If the Receiving Party files a lawsuit for retaliation by the Disclosing

Party for reporting a suspected violation of law, the Receiving Party may disclose the trade secret to the attorney of the Receiving Party and use the trade secret information in the court proceeding if the Receiving Party (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except as permitted by court order.

2. **Remedies**. Upon the failure of a party (a "**Defaulting Party**") to comply with the terms of this Agreement, the following remedies will be available to the other party (the "**Non-Defaulting Party**"):

(i) <u>Indemnification</u>. The Defaulting Party agrees to indemnify and hold the Non-Defaulting Party, its members, shareholders, directors, officers, employees and affiliates harmless from and against any and all loss, damage, cost or expense (including reasonable attorneys' fees and costs) resulting from or arising out of the breach of any covenant or agreement made herein by Defaulting Party or any of its officers, directors, employees, agents, representatives or affiliates.

(ii) <u>Injunctive Relief</u>. The parties hereto admit and agree that a breach of any part of the Agreement would result in irreparable harm to the Non-Defaulting Party. Accordingly, it is agreed that the Non-Defaulting Party shall be entitled, upon application to a court of competent jurisdiction, to obtain injunctive or other equitable relief to enforce the provisions of this Agreement, which relief shall be in addition to any other rights or remedies available to the Non-Defaulting Party. In any action or proceeding by the Non-Defaulting Party to obtain injunctive or other equitable relief, including without limitation a restraining order, the Defaulting Party hereby agrees to waive the necessity of the Non-Defaulting Party's posting a bond or other security in order to obtain the such relief and waives any defenses to entitlement to such relief, including without limitation prior or subsequent breach, failure of consideration, and availability of relief in damages.

(iii) <u>Other Remedies</u>. The parties hereto acknowledge that any injunctive relief available pursuant to this Agreement shall be in addition to, and not in lieu of, any other remedy available in law or equity by reason of a party's breach or threatened breach of the covenants and restrictions contained herein.

3. **Business Relationship**. Each party acknowledges that this Agreement is not intended to and does not obligate either party to continue any existing business relationship, enter into any further discussions, negotiations or agreements, or to otherwise proceed with any potential business relationship or other transaction with the other party hereto. Nothing herein shall imply or create any exclusive relationship between the parties or otherwise restrict either party from pursuing any other business opportunities or relationships, provided that such party complies at all times with its obligations set forth herein.

4. **Disclaimer of Reliance**. The Receiving Party hereby acknowledges and agrees that (a) the Disclosing Party makes no representation or warranty of any kind (express or implied), and hereby expressly disclaims any representation and warranty (express or implied), as to the accuracy or completeness of the Confidential Information provided by it hereunder or as to any other matter, and (b) the Receiving Party is not entitled to rely on the accuracy or completeness of the Confidential Information provided to it hereunder, and the Disclosing Party will have no liability to the Receiving Party as a result of any such reliance by the Receiving Party.

5. **No License**. Nothing in this Agreement is intended to grant any property rights, by license or otherwise, to either party under any patent, mask work right or copyright, trademark, or other intellectual property right, nor shall this Agreement grant any party any rights in or to the Confidential Information of the other party except as expressly set forth herein. The Receiving Party acknowledges and agrees that any and all Confidential Information received by it under this Agreement is of a confidential, proprietary and/or trade secret nature to the Disclosing Party and that, as to the parties, the Disclosing Party owns all intellectual property rights in any applicable Confidential Information.

6. **Miscellaneous**.

(i) Entire Agreement. This Agreement contains the full and complete understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written. This Agreement may not be modified in any manner except by written amendment executed by both of the parties hereto via handwritten or electronic signature affixed to the written amendment.

(ii) Assignment. Neither party may assign its rights or obligations hereunder, or any portion thereof, to any other person or entity without the express written consent of the other party hereto.

(iii) Attorneys' Fees. In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and expenses from the losing party, whether incurred before suit is brought, in the course of any injunction proceedings, before or after trial or arbitration, on appeal, or in insolvency proceedings.

(iv) Governing Law and Venue. This Agreement shall be governed by the substantive laws of the State of Florida, without regard to its procedural law of conflicts. Any disputes shall be resolved in the State or Federal Court in and for Orange County, Florida.

(v) **WAIVER OF JURY TRIAL**. **EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

(vi) Authority. The officer or other person whom is executing and delivering this Agreement on behalf of a party hereto covenants that such officer or person is legally authorized to execute and deliver this instrument on behalf of such party.

(vii) Counterparts. This Agreement may be executed in separate counterparts, each of which shall be an original, but all of which taken together shall constitute one and the same instrument. Delivery of a copy of a manually executed counterpart hereof via facsimile transmission or by electronic mail transmission shall be as effective as delivery of a manually executed counterpart hereof.

**IN WITNESS WHEREOF**, the parties hereto have executed this **MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT** effective as of the date first written above.

Doc ID: 08bad42ed59501dd6f81973d94b300d4a7c04d74

| | |
|---|---|
| BLACKCLOAK, Inc., <br> a Delaware corporation <br><br> By: *Chris Linde* <br> Christopher Linde, Esq., <br> its Chief Operating Officer | RECEIVING PARTY <br><br> Scamnetic, Inc. <br> _____ <br> Organization <br><br> By: *Al Pascual* _____ <br><br> Printed Name: ____Al Pascual_____ <br><br> Effective Date: __05 / 31 / 2024_____ |

Doc ID: 08bad42ed59501dd6f81973d94b300d4a7c04d74

**Dropbox Sign**                                                                                   Audit trail

| | |
|---|---|
| Title | BlackCloak NDA |
| File name | Copy of Form Mutu...24-2020) (1).docx |
| Document ID | 08bad42ed59501dd6f81973d94b300d4a7c04d74 |
| Audit trail date format | MM / DD / YYYY |
| Status | • Signed |

## Document History

**VIEWED**
**05 / 31 / 2024**
09:54:16 UTC-4

Viewed by - (al@scamnetic.com)
IP: 47.203.15.52

**E-SIGN DISCLOSURE ACCEPTED**
**05 / 31 / 2024**
09:56:45 UTC-4

Electronic record and signature disclosure accepted by (al@scamnetic.com)
IP: 47.203.15.52
GUID: 4ef59255f85f1cc3607bb076410a77b724b454d7

**SIGNED**
**05 / 31 / 2024**
09:57:19 UTC-4

Signed by - (al@scamnetic.com)
IP: 47.203.15.52

**COMPLETED**
**05 / 31 / 2024**
09:57:19 UTC-4

The document has been completed.

Powered by **Dropbox Sign**